UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID ALLEN CAMPBELL,
                    Petitioner,

                                        Case No. 06-10609
v.                                      Honorable Patrick J. Duggan

HUGH WOLFENBARGER,
                    Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION
## FOR A WRIT OF HABEAS CORPUS

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan on April 23, 2008.

PRESENT:  HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

This is a habeas case under 28 U.S.C. § 2254.  David Allen Campbell

("Petitioner"), a state prisoner currently confined at the Huron Valley Men's Complex in

Ypsilanti, Michigan, was convicted of alternate counts of first-degree premeditated

murder and felony murder, felon in possession of a firearm, and three counts of

possession of a firearm during the commission of a felony following a bench trial in the

Oakland County Circuit Court in 2002.  On November 7, 2002, the trial court sentenced

him to life imprisonment without the possibility of parole on the first-degree premeditated

murder conviction, a term of three to five years imprisonment on the felon in possession

of a firearm conviction, to be served consecutively to the two concurrent two-year terms

1

of imprisonment for the felony firearm convictions.[1]  In his habeas application (as amended), Petitioner raises the following claims: ineffective assistance of trial counsel; prosecutorial misconduct; and the lack of a speedy trial.  He also raises evidentiary and sufficiency of the evidence claims in an attachment to his petition.  For the reasons set forth below, the Court denies with prejudice the petition for writ of habeas corpus.

## I.  Factual Background

Petitioner's convictions arise from the shooting death of Ricardo Flores in Pontiac, Michigan on March 5, 1996.  The trial court in rendering its verdict, summarized the relevant facts as follows:

> On March 5, 1996, Ricardo Flores, 37, left work at Little Caesar's Pizza on Perry Road in Pontiac, Michigan and was in the process of making his first pizza delivery of that day around 4:00 p.m. when he was killed by a single bullet shot in his brain on the right side of [his] head above his right ear. Sometime after Flores was reported missing his pickup truck was located in the early morning hours of the next day with the deceased Flores slumped over the front right passenger seat, frozen stiff.
>
> Discovery of the victim's body was made by his relatives Stephanie Flores and Jennifer Mojica who started looking for the victim about 8:30pm.m on March 5.  The evidence indicates that the body had not been disturbed from its position in the vehicle after death due to rigor mortis and lividity findings.  Witness Michael Lee Todd observed the truck at 11:30 p.m. before he removed snow in the parking lot where the victim's truck was found.

---

[1]At Petitioner's sentencing, the trial court sentenced Petitioner to life imprisonment on the felony murder conviction and two-years for the felony firearm conviction associated with the felony murder charge, but later vacated these sentences.

As a result of the autopsy performed on Flores, a single lead bullet, either a 22 or 25 caliber was recovered from the head, and the cause of death was a gunshot to the head.

The evidence shows that when the victim went to his truck to make the pizza delivery, he had the pizza store $15 plus coins to make change and the pizza bag. The pizza was never delivered and both the pizza bag and coins were found with the deceased but the $15 was missing. When Flores was leaving the pizza store witness Michael Angona, brother of the pizza store manager, was up in a tree trimming outside the store and saw that another person approached the victim and the two conversed briefly and both got into the truck. The witness could not identify the second man. Randy Angona, the manager, testified that he saw the truck leave the parking lot headed in the wrong direction for the pizza delivery address.

Officer Joyce investigated Flores' truck finding blood in several areas, and as a result of processing for fingerprints the only identifiable latent prints that he could recover were found on the rearview mirror located on each corner. With no known suspects at the time the latent prints were entered in the AFIS system (Automated Fingerprint Information System). AFIS identified a match belonging to David Allen Campbell. Deputy O'Conner, an expert in fingerprint identification, compared the latent prints to an earlier arrest car of the Defendant's in the Sheriff's archives from 1990 and found a perfect match. She further testified that the recent prints of the Defendant on trial were also a perfect match to the latents and that it was the Defendant's right thumb located on each corner of the rearview mirror that was taken from Flores' truck at the homicide scene. She opined that the latent prints were of recent vintage due to the condition of the latent prints.

The evidence shows that the victim and the Defendant were acquainted with one another and had some drug dealings previously. The victim was upset because Defendant sold him a "peanut," the name for a fake cocaine rock. Earlier in the afternoon of March 5th the victim went to the house where

Henry Jackson, Ken Fuentes, and their family group lived. Also staying at that house was the Defendant. When Mr. Flores went to the living room to pay Henry Jackson the $50 Flores owed for a prior cocaine purchase he asked for the Defendant who had secreted himself in the kitchen out of Flores' view but within hearing of Flores. After being told that the Defendant was not there Flores shared his good new that he had received his income tax refund check that day for $2,500 according to Fuentes' testimony. Actually the proofs show that Flores and his wife received a refund check in the amount of $3,157.40 of which $2,500 was deposited in a new bank account of Flores and his wife. The remainder of the check was taken in cash for various purposes.

Shortly after Flores left the Jackson house the Defendant asked Henry Jackson to borrow "Smoke," a .22 revolver which was purchased on the street about ten days prior when Jackson, Fuentes, and the Defendant were working together at an odd job located near where the victim's truck was found. The Defendant wanted Smoke in order to "hit a lick" and Jackson believed the Defendant meant the victim Flores. Jackson gave the gun to the Defendant. Both men knew the gun was operable.

Later that day the defendant returned to the Jackson house around 4:00 or 4:30 looking pale, shaking, blood on his hands and clothes and told Jackson, "I did Rick." The Defendant told Jackson what he did, that he shot Rick, that he went to Glenwood Plaza, that he scuffled with Rick and shot him in the head in the truck, that he drove the truck to 40 Howard and left the truck with Rick inside. Factually the victim being 5'6" tall was much shorter than the Defendant, thereby explaining the latent prints of the Defendant that were found on the rearview mirror which he adjusted for his height.

The Defendant changed his bloody clothes. Meanwhile Jackson awakens Fuentes and subsequently the Defendant tells Fuentes what he did to Rick, the victim, repeating the same information as told to Jackson. All three, Jackson, Fuentes, and the Defendant went down to the truck, looked at it and returned home. Fuentes testified the next day the

Defendant said he had to kill Flores because he didn't want any witnesses, and shot him behind the right ear, that the Defendant showed no remorse, and that the Defendant threatened Fuentes and his family about snitching. Whereupon Jackson and his family left and the Fuentes family packed on left the house within an hour and the following day Fuentes left.

After the Defendant was arrested for the instant offenses and while in custody, he wrote a number of letters to a lady with whom he resided along with her husband. The letters by strange fate came into the possession of the police. The Defendant wrote among other things that he killed a man and "if I just had someone, anyone in my life, I may have turned out to be something other than a murderer." The lady, Melissa Hutchinson, testified that the Defendant, upon learning that the police had his letters, concocted a scheme soliciting her assistance that would make him sound insane and discredit the content of the letters.

*People v. Campbell*, 01-179936 FC (Oakland Co. Cir. Ct. Verdict, Oct. 14, 2002).

As noted, the trial court found Petitioner guilty of the charged offenses of first-degree premeditated and felony murder, felon in possession of a firearm, and felony firearm. The court sentenced Petitioner to life imprisonment without the possibility of parole on the first-degree premeditated murder conviction, a term of three to five years imprisonment on the felon in possession of a firearm conviction, to be served consecutively to the two concurrent two-year terms of imprisonment for the felony firearm convictions.

II.  <u>**Procedural History**</u>

Following his convictions and sentencing, Petitioner filed an appeal as of right raising claims concerning the admission of evidence, the denial of a directed verdict

motion, prosecutorial misconduct, and ineffective assistance of trial counsel, which included a speedy trial issue. The Michigan Court of Appeals affirmed his convictions and sentence. *People v. Campbell*, No. 246271, 2004 WL 1565244 (Mich. App. July 13, 2004)(unpublished). Petitioner then raised the same claims in an application for leave to appeal with the Michigan Supreme Court, which the court denied. *People v. Campbell*, 472 Mich. 867, 692 N.W.2d 841 (2005).

Petitioner initially submitted a petition for writ of habeas corpus on January 23, 2006 raising claims of ineffective assistance of counsel, prosecutorial misconduct, lack of a speedy trial, and the prosecution's failure to disclose evidence. The Court dismissed the petition without prejudice on exhaustion grounds due to Petitioner's failure to present his non-disclosure of evidence claim to the state courts. Petitioner subsequently moved to re-open the case to proceed only on the exhausted issues in his petition. The Court granted Petitioner's request, re-opened the case, and ordered Respondent to file an answer to the amended petition. Respondent has since filed an answer to the amended petition asserting that it should be denied for lack of merit. Petitioner has filed a reply to that answer.

## III.   Analysis

### A.      Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law,
> as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in
> the State court proceeding.

28 U.S.C. § 2254(d). Simply stated, under § 2254(d), Petitioner must show that the state court's decision "was either contrary to, or an unreasonable application of, [the Supreme] Court's clearly established precedents, or was based upon an unreasonable determination of the facts." *Price v. Vincent*, 538 U.S. 634, 639, 123 S. Ct. 1848, 1852-53 (2003).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

"[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409, 120 S. Ct. at 1521. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."

7

*Id.* at 411, 120 S. Ct. at 1522. "Rather, it is the habeas applicant's burden to show that the state court applied [Supreme Court precedent] to the facts of his case in an objectively unreasonable manner." *Woodford v. Visciotti*, 537 U.S. 19, 25, 123 S. Ct. 357, 360 (2002).

### B.      Ineffective Assistance of Counsel Claims

Petitioner first asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to investigate and present exculpatory evidence, for failing to file pretrial motions, for improperly persuading him to waive his rights to a jury trial and to testify, for failing to subpoena records, for failing to file a speedy trial motion, for failing to object to the admission of Petitioner's letters to a witness, for failing to seek appointment of an investigator, and for failing to communicate with him before trial. Petitioner also contends that the trial court erred in denying his motion for a new trial without conducting an evidentiary hearing. Respondent contends that these claims lack merit and do not warrant habeas relief.

In order to establish ineffective assistance of counsel, Petitioner must show "that counsel's performance was deficient ... [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). In determining whether counsel's performance was deficient,

> [t]he court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance . . . .

> At the same time, the court should recognize that counsel is
> strongly presumed to have rendered adequate assistance and
> made all significant decisions in the exercise of reasonable
> professional judgment.

*Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066. Therefore, judicial scrutiny of counsel's

performance must be "highly deferential." *Id*. at 689, 104 S. Ct. at 2065. One's defense

is prejudiced only if "there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." *Id*. at 694,

104 S. Ct. at 2068.

A successful ineffective assistance of counsel claim requires proof that counsel's

performance was deficient and that counsel's "errors deprived [Petitioner] of a fair trial."

*Precin v. United States*, 23 F.3d 1215, 1218 (7th Cir. 1994)(citing *Lockhart v. Fretwell*,

506 U.S. 364, 368, 113 S. Ct. 838, 842 (1993)). The court must assess the ineffective

assistance claim in relation to the evidence of Petitioner's guilt. "[A] court hearing an

ineffectiveness claim must consider the totality of the evidence before the judge or jury. .

. . [A] verdict or conclusion only weakly supported by the record is more likely to have

been affected by errors than one with overwhelming record support." *Strickland*, 466

U.S. at 695-96, 104 S. Ct. at 2069. A petitioner will generally be unable demonstrate that

any errors by counsel prejudiced the defense where "there is strong evidence of a

petitioner's guilt and a lack of evidence to support his claim." *Rust v. Zent*, 17 F.3d 155,

162 (6th Cir. 1994).

Citing the *Strickland* standard, the Michigan Court of Appeals denied relief on

Petitioner's ineffective assistance of counsel claims, essentially finding that Petitioner had

failed to rebut the presumption that counsel's actions were sound trial strategy, that

Petitioner had waived his rights to a jury trial and to testify in open court, that Petitioner

had not shown that his defense was prejudiced by pretrial delay, that Petitioner's letters

were admissible, that Petitioner had not shown that counsel's actions deprived him of a

substantial defense, and that Petitioner had not shown that but for any error by counsel the

result would have been different. *See Campbell*, 2004 WL 1565244, at *3-4. Having

carefully reviewed the record, this Court concludes that the Michigan Court of Appeals'

decision is neither contrary to Supreme Court precedent nor an unreasonable application

of federal law or the facts.

Petitioner first asserts that defense counsel was ineffective for failing to investigate

his case and disclose exculpatory evidence. Defense counsel has a duty to conduct a

reasonable investigation into the facts of a defendant's case, or to make a reasonable

determination that such investigation is unnecessary. *See, e.g., O'Hara v. Wiggington*, 24

F.3d 823, 828 (6th Cir. 1994); *Workman v. Tate*, 957 F.2d 1339, 1345-46 (6th Cir. 1992).

Petitioner has not established that defense counsel failed to take reasonable steps to

prepare for trial, interview witnesses, or investigate potential defenses. Petitioner does

not indicate what additional information defense counsel should have reasonably

discovered or produced which would have affected the outcome at trial. Conclusory

allegations are insufficient to warrant habeas relief. *See, e.g., Workman v. Bell*, 160 F.3d

276, 287-88 (6th Cir. 1998)(stating that conclusory allegations of ineffective assistance of

counsel do not justify federal habeas relief); *see also Zettlemoyer v. Fulcomer*, 923 F.2d 284, 301 (3rd Cir. 1991)(stating that bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings).

The record indicates that defense counsel took reasonable steps to investigate the matter and attempted to refute the prosecution's case by cross-examining witnesses and exposing weaknesses in their testimony. The fact that trial counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See, e.g., Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002)("[A]n ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken.") Accordingly, to the extent that Petitioner generally asserts that counsel was ineffective for failing to investigate his case before trial, he is not entitled to habeas relief.

Petitioner relatedly asserts that counsel was ineffective for failing to present certain evidence and ask certain questions at trial. Specifically, Petitioner asserts that counsel failed to call Kenny Fuentes' wife as a witness to testify about an affair with Petitioner (to establish Fuentes' bias), failed to present evidence of Petitioner's financial resources (to show lack of motive for robbery), and failed to sufficiently question Stephanie Flores and Michael Angona.[2]

---

[2]It is unclear whether Petitioner presented these specific factual issues, and others included in his ineffective assistance of counsel claims, to the state courts. The Court will, nonetheless, address such matters in the interest of judicial economy. *See* 28 U.S.C. § 2254(b)(2)(providing that habeas petition may be denied on the merits despite the

Decisions as to what evidence to present and whether to call certain witnesses are presumed to be a matter of trial strategy, and the failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Chegwidden v. Kapture*, 92 Fed. Appx. 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). Petitioner has not rebutted this presumption. He has not presented evidence, other than his own assertions, to support this claim. Nor has he shown that counsel's conduct deprived him of a substantial defense. As noted, the fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See Moss*, 286 F.3d at 859. Petitioner has not shown that defense counsel was ineffective under the standard set forth in *Strickland, supra*, and thus, he is not entitled to relief on this claim.

Petitioner also asserts that counsel was ineffective for failing to file pretrial motions. Aside from the speedy trial motion, discussed *infra*, Petitioner asserts that counsel should have filed pretrial motions for blood spatter and DNA experts. Petitioner, however, has failed to show that such motions would have been successful. Petitioner admits that counsel requested such experts at trial in response to Officer Michael Joyce's testimony and sought to exclude certain portions of his testimony, but the trial court denied those requests. Further, neither blood spatter nor DNA evidence was relied upon to support Petitioner's convictions. In fact, Officer Joyce admitted that neither DNA

---

failure to exhaust state remedies).

testing nor the blood smears found on the truck in which the victim was found implicated Petitioner in the crime. Petitioner has failed to show that counsel was deficient and/or that he was prejudiced by counsel's conduct in this regard.

Petitioner next asserts that defense counsel was ineffective for improperly persuading him to waive his rights to a jury trial and to testify. The right to a jury is fundamental. *Duncan v. Louisiana*, 391 U.S. 145, 149, 88 S. Ct. 1444, 1447 (1968). The waiver of a constitutional right must be voluntary, knowing, and intelligent. *See Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970). "Whether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 278, 63 S. Ct. 236, 241 (1942). A defendant may waive the right to a jury trial if four elements are established: (1) the waiver must be in writing; (2) the government must consent to the waiver; (3) the trial court must consent to the waiver; and (4) the defendant's waiver must be voluntary, knowing, and intelligent. *United States v. Martin*, 704 F.2d 267, 271 (6th Cir. 1983). A petitioner bears the burden of proving that his waiver of a jury trial was not knowing, voluntary, or intelligent. *Sowell v. Bradshaw*, 372 F.3d 821, 832 (6th Cir. 2004). Although an on-the-record colloquy with the court is advisable, it is not constitutionally required. *Id*. at 832 n. 5.

A review of the record confirms that Petitioner's waiver was valid. Petitioner executed a written waiver of his right to a jury trial. Before trial, Petitioner acknowledged that he had a right to a jury trial, stated that he read and understood the

jury trial waiver form, and agreed that he wanted a trial without a jury. On the basis of this record, the Court finds that Petitioner has failed to show that his waiver was improper or that counsel coerced him into consenting to a bench trial. There is also no evidence to suggest that the decision to waive a jury trial was unreasonable or that a jury trial would have resulted in a different outcome at trial. Petitioner has failed to overcome the presumption that counsel's advice was sound trial strategy. *See Strickland*, 466 U.S. at 689. Habeas relief is not warranted on this claim.

Petitioner is also not entitled to relief on his claim that counsel was ineffective for advising him not to testify at trial. It is well-established that a criminal defendant has a constitutional right to testify in his own behalf. *See Rock v. Arkansas*, 483 U.S. 44, 52-53 & n. 10, 107 S. Ct. 2704, 2709-10 & n.10 (1987); *Neuman v. Rivers*, 125 F.3d 315, 318 (6th Cir. 1997). "However, it has been held that a 'barebones assertion by a defendant, [even one] made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary . . . to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.'" *McCoy v. Bock*, 01-10052, 2003 U.S. Dist. LEXIS 27207, 2003 WL 22994984, *11 (E.D. Mich. Dec. 17, 2003)(Lawson, J.)(quoting *Underwood v. Clark*, 939 F.2d 473, 476 (7th Cir. 1991) and citing *Chang v. United States*, 250 F.3d 79, 84-85 (2nd Cir. 2001); *Sciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987)).

14

In this case, Petitioner makes only a bald assertion that trial counsel precluded him from testifying at trial. Petitioner does not allege facts to show that he was misled or believed he was not allowed to testify. "[D]efense counsel's role is to advise the defendant whether or not the defendant should take the stand, but it is for the defendant, ultimately, to decide." *See United States v. Webber*, 208 F.3d 545, 550-51 (6th Cir. 2000)(citing cases). A defendant must "alert the trial court" that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. *Id.* at 551. "Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so." *Id*. Petitioner did not testify nor notify the trial court of his desire to do so during trial. Accordingly, waiver of the right to testify is presumed. Petitioner has not rebutted this presumption, and thus, he is not entitled to relief on this claim.

Petitioner also claims that counsel was ineffective for failing to subpoena records from the home owner regarding when Henry Jackson and Ken Fuentes vacated their residence. Petitioner, however, has failed to present such records. As noted, conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Workman*, 160 F.3d at 287. Moreover, Petitioner has failed to show that any such records would have affected the outcome at trial. Habeas relief is not warranted.

Petitioner next contends that counsel was ineffective for failing to file a speedy trial motion. Defense counsel cannot be deemed deficient for failing to make a futile objection or motion. *See McQueen v. Scroggy*, 99 F.3d 1302, 1328 (6th Cir. 1996).

15

Given the Michigan Court of Appeals' decision and this Court's determination that the speedy trial claim lacks merit, *see Campbell*, 2004 WL 1565244, at *4, Petitioner cannot establish that defense counsel was ineffective under the standard set forth in *Strickland, supra*. Habeas relief is not warranted on this claim.

Petitioner also asserts that counsel was ineffective for failing to object to the admission of Petitioner's letters to Melissa Hutchinson. This claim is belied by the record which shows that counsel objected to the admission of the letters, but the trial court overruled the objection. Moreover, given the Michigan Court of Appeals' determination that the letters were admissible under Michigan law, *Campbell*, 2004 WL 1565244, at *4, Petitioner cannot establish that counsel was ineffective. *McQueen*, 99 F.3d at 1328. Habeas relief is not warranted.

Petitioner next claims that counsel was ineffective for failing to seek appointment of an investigator to investigate the relationship between the victim, Henry Jackson, Ken Fuentes, and their drug dealings. Petitioner, however, has failed to present this Court with any evidence demonstrating what information an investigator appointed before the 2002 trial would have uncovered about the 1996 crime that was not presented at trial. As noted, conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Workman*, 160 F.3d at 287. Further, the record reveals that some such information was presented at trial. Both Jackson and Fuentes admitted knowing the victim and admitted that he was at their house on the day of the murder. Jackson also acknowledged that he was a drug dealer in 1996 and that he had sold the victim drugs.

Additionally, the victim's wife testified that Jackson and another man were at her home on the day of the crime and that her husband confronted the man about selling him fake drugs. The record further reveals that defense counsel cross-examined the witnesses about their association with the victim. Petitioner has failed to establish that counsel was deficient or that he was prejudiced by counsel's conduct in not seeking the appointment of an investigator.

Petitioner also asserts that defense counsel was ineffective for failing to communicate with him before trial. This claim conflicts with Petitioner's statement at trial that he was satisfied with counsel's services. More importantly, Petitioner has failed to establish that he was prejudiced by counsel's conduct. He does not indicate what counsel would have discovered or accomplished upon further consultation with him and/or how it would have affected the outcome at trial. He has thus failed to show that he was prejudiced by counsel's alleged failure to consult with him. *See, e.g., Dell v. Straub*, 194 F. Supp. 2d 629, 653 (E.D. Mich. 2002)(Friedman, J.); *accord Foster v. Delo*, 39 F.3d 873, 877 (8th Cir. 1994). Habeas relief is not warranted on this issue.

Lastly, Petitioner contends that the trial court erred in denying his motion for new trial without granting him an evidentiary hearing on his ineffective assistance of counsel claims. However, a state court's alleged failure to properly apply state law or its own procedural rules is not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480 (1991). Habeas relief is unavailable for errors of state law, and a federal court will not review a state court's decision on a matter of state law.

*See Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102 (1990); *Long v. Smith*, 663 F.2d 18 (6th Cir. 1981).  Furthermore, given the Court's determination that the foregoing ineffective assistance of counsel claims lack merit, Petitioner has not shown the need for an evidentiary hearing.  Habeas relief is not warranted.

### C.    Prosecutorial Misconduct Claims

Petitioner asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by appealing to the court's sympathies and by referring to facts not in evidence.  Respondent contends that these claims lack merit.

To prevail on a claim of prosecutorial misconduct, a habeas petitioner must demonstrate that the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  *Donnelly v. DeChristoforo*, 416 U.S. 637, 643,  94 S. Ct. 1868, 1871 (1974).  The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights.  *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002)(citing cases).  First, the court must determine whether the challenged statements were indeed improper.  *Id*. at 452.  Upon a finding of impropriety, the court must decide whether the statements were flagrant.  *Id*.  Flagrancy is determined by an examination of four factors:  1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused.  *Id*.  "[T]o

constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

Petitioner first asserts that the prosecutor improperly appealed to the trial court's sympathies by discussing the depraved nature of the crime and the fact that it took years to bring Petitioner to justice. It is well-settled that prosecutors cannot make statements calculated to incite the passions and prejudices of the jury. *See, e.g., Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006). Rather, prosecutors must base their arguments on the evidence and testimony presented at trial.

The Michigan Court of Appeals denied relief on this claim finding that any appeal to the trial court's sympathies did not affect the court's decision "particularly in light of the overwhelming evidence of guilt." *See Campbell*, 2004 WL 1565244, at *2. This Court concludes that the state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. To the extent that any comments by the prosecutor could be seen as improper, they were not so flagrant as to deprive Petitioner of a fair trial. The disputed remarks, although deliberate, were relatively isolated in nature and were unlikely to influence the trial court which is presumed to know and follow the law that its decision must be based upon the evidence presented at trial and not the arguments of counsel. *See Walton v. Arizona*, 497 U.S. 639, 653, 110 S. Ct. 3047, 3051 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 122

S. Ct. 2428 (2002); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 603 (6th Cir. 2006).

Further, as noted by the Michigan Court of Appeals, the prosecution presented significant

evidence of Petitioner's guilt, including the fingerprint evidence, the testimony of Henry

Jackson and Ken Fuentes, and Petitioner's own admissions. Petitioner has failed to

establish that the prosecutor's remarks deprived him of fundamentally fair trial. Habeas

relief is not warranted.

Petitioner next asserts that the prosecutor referred to facts not in evidence by

stating that Petitioner and Flores had an argument at Flores' home on the day of his

murder. A prosecutor may not misstate the evidence or assume the existence of

prejudicial facts not in evidence. *See Darden v. Wainwright*, 477 U.S. 168, 182, 106 S.

Ct. 2464, 2472 (1986); *United States v. Everett*, 270 F.3d 986, 993 (6th Cir. 2001). A

prosecutor, however, has leeway to argue reasonable inferences from the evidence. *See,*

*e.g., Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000).

The Michigan Court of Appeals concluded the prosecutor's statement was based

upon a reasonable inference from the trial testimony that a tall, thin, scruffy man had

visited Flores and argued with him on the day of his murder. *See Campbell*, 2004 WL

1565244, at *3. The state court's decision is neither contrary to Supreme Court precedent

nor an unreasonable application of the law or the facts. The prosecutor's statement

identifying Petitioner as the man who had argued with Flores on the day of the murder

was based upon a reasonable inference from the witnesses' testimony. Petitioner has not

shown that the prosecutor's comment was improper. Habeas relief is not warranted.

**D.      Speedy Trial Claim**

Lastly, Petitioner asserts that he is entitled to habeas relief because he was denied his right to a speedy trial.  Respondent contends that this claim is unexhausted and/or lacks merit.

A state officials' violation of a state speedy trial law, taken alone, does not present a federal claim subject to review in a habeas proceeding.  *See Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994).  A state statute has no bearing upon whether a state has violated a petitioner's federal constitutional right to a speedy trial as protected by the Sixth Amendment.  *Stewart v. Nix*, 972 F.2d 967, 970 (8th Cir. 1992).  Federal consideration of a claim that a state has violated its own speedy trial rules is limited to a determination of whether the state's action has violated a petitioner's federal constitutional right to a speedy trial or due process.  *See Flenoy v. Russell*, 902 F.2d 33, 1990 WL 61114, * 3 (6th Cir. May 8, 1990)(citing *Millard v. Lynaugh*, 810 F.2d 1403, 1406 (5th Cir. 1987)); *see also Wells v. Petsock*, 941 F.2d 253, 256 (3rd Cir. 1991).  Michigan's 180-day rule does not define the contours of the federal constitutional right to a speedy trial and a violation of that rule alone does not entitle Petitioner to habeas relief.

To the extent that Petitioner's claim may be construed as a Sixth Amendment speedy trial claim, it must also be rejected.  The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI.  The United States Supreme Court has identified four factors to be considered in assessing a Sixth Amendment speedy trial claim: (1) the length of the

delay; (2) the reason for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant. *See Doggett v. United States*, 505 U.S. 647, 651, 112 S. Ct. 2686, 2690 (1992); *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192 (1972). The factors are to be balanced such that no factor alone is sufficient to establish a Sixth Amendment violation. *See Barker*, 407 U.S. at 533, 92 S. Ct. at 2193.

The Michigan Court of Appeals addressed this clam in the context of Petitioner's ineffective assistance of counsel claim. The court found that the delay between Petitioner's arrest and trial was less than 18 months such that prejudice was not presumed and concluded that Petitioner failed to show that his defense was prejudiced by the delay. *See Campbell*, 2004 WL 1565244, at *4. Because the Michigan Court of Appeals did not specifically address whether the alleged error constituted a denial of Petitioner's federal speedy trial rights, the deference due under 28 U.S.C. § 2254(d) does not apply, and habeas review of the claim is *de novo. See Higgins v. Renico*, 470 F.3d 624, 630 (6th Cir. 2006)(quoting *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003) and citing *Wiggins v. Smith*, 539 U.S. 510, 534, 123 S. Ct. 2527, 2542 (2003)).

Having conducted the requisite review, this Court concludes that Petitioner has failed to demonstrate a violation of his Sixth Amendment right to a speedy trial. First, Petitioner presents no facts or arguments to support this claim in his petition. In his state appellate brief, Petitioner merely alleged that trial counsel was ineffective for failing to object to a 17-month delay. (*See* Brief of Defendant-Appellant, p. 23.) As noted, conclusory allegations, without evidentiary support, do not provide a basis for habeas

relief.  *See Workman*, 160 F.3d at 287.  Second, the record reveals that Petitioner caused, requested, and/or consented to at least four months of the delay in bringing him to trial. (*See* Appellee's Brief, Appx. G.)  Third, Petitioner has not shown that he asserted his right to a speedy trial.  In fact, given his claim that trial counsel was ineffective in this regard, it is reasonable to presume that no such assertion was made.  Fourth, Petitioner has not alleged improper reasons for any delay attributable to the prosecution.  Lastly and significantly, Petitioner has not established that his defense was materially prejudiced by the delay.  *See, e.g., Wallace v. Lockhart*, 701 F.2d 719, 729 (8th Cir. 1983).  Petitioner is thus not entitled to relief on this claim.

### E.      Evidentiary Claim

In the pages attached to his form petition, Petitioner also asserts that he is entitled to habeas relief because the trial court erred in admitting the transcript of a 911 call that victim Flores' mother made after Flores' body was found.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief.  *See Estelle*, 502 U.S. at 67-68, 112 S. Ct. at 480; *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Only when an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief.  *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The Michigan Court of Appeals found that the trial court erred in admitting the transcript because there was an inadequate foundation concerning its accuracy, but

nonetheless denied relief on this claim because the transcript was cumulative to the tape recording of the 911 call which had been admitted into evidence without objection. The court also noted that neither piece of evidence implicated Petitioner. *See Campbell*, 2004 WL 1565244, at *1.

Having considered the matter, this Court concludes that Petitioner has failed to show that the admission of the 911 transcript rendered his trial fundamentally unfair. The transcript was cumulative to the properly admitted tape recording, there is no evidence that the transcript was inaccurate, and the transcript was not inculpatory. Given such circumstances, habeas relief is not warranted.

### F.    Insufficient Evidence Claim

In the attachment to his petition, Petitioner also seems to assert that there was insufficient evidence to support his convictions. "A habeas court reviews a claim that the evidence at trial was insufficient for a conviction by asking 'whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *See Scott v. Mitchell*, 209 F.3d 854, 885 (6th Cir. 2000)(quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)). This standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16, 99 S. Ct. at 2792, n. 16. When applying this standard, a habeas court does not re-weigh the evidence or re-determine the credibility of the witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). "It is the province of the fact-finder to

weight the probative value of the evidence and resolve any conflicts in testimony." *Id*.

Therefore, "[t]he mere existence of sufficient evidence to convict . . . defeats a

petitioner's claim." *Id*. at 788-89 (citations omitted).

Under Michigan law, first-degree premeditated murder requires proof that "the

defendant intentionally killed the victim and that the act of killing was premeditated and

deliberate." *See People v. Kelly*, 231 Mich. App. 627, 642, 588 N.W.2d 480, 488 (1998);

MICH. COMP. LAWS § 750.316(1)(a). Premeditation and deliberation may be established

by evidence of "(1) the prior relationship of the parties; (2) the defendant's actions before

the killing; (3) the circumstances of the killing itself; and (4) the defendant's conduct after

the homicide." *People v. Schollaert*, 194 Mich. App. 158, 170, 486 N.W.2d 312, 318

(1992). A person who commits murder during the perpetration of a felony is also guilty

of first-degree murder. *See* MICH. COMP. LAWS § 750.316(1)(b). The elements of felony

murder are: (1) the killing of a human being, (2) with the intent to kill, to do great bodily

harm, or to create a very high risk of death or great bodily harm with knowledge that

death or great bodily harm was the probable result [i.e., malice], (3) while committing,

attempting to commit, or assisting in the commission of any of the felonies specifically

enumerated in the statute. *People v. Carines*, 460 Mich. 750, 758-59, 597 N.W.2d 130,

136 (1999). The facts and circumstances of the killing may give rise to an inference of

malice, including evidence that the defendant used a deadly weapon. *Id*.

The Michigan Court of Appeals considered this issue in the context of Petitioner's

claim that the trial court erred in denying his directed verdict motion. Applying the

*Jackson* standard, the Michigan Court of Appeals denied relief on this issue, stating in relevant part:

> Here, there was evidence that defendant was aware that the victim had recently received a tax refund, that defendant borrowed a loaded gun intending to rob the victim, and that defendant encountered the victim at his workplace. The victim was subsequently found shot to death and money that the victim received from his employer was missing. According to one witness, defendant told the witness that he shot the victim because the victim refused to turn over his money. Another witness testified that defendant said he shot the victim because he did not want "any witnesses to tell." Viewed in a light most favorable to the prosecution, the evidence was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that defendant shot the victim after having sufficient time to take a second look at his contemplated actions, and that the victim was killed during the commission of a robbery. *People v. Furman*, 158 Mich App 302, 308; 404 NW2d 246 (1987). Therefore, the evidence was sufficient to support defendant's convictions under each alternative theory of first-degree murder.

*Campbell*, 2004 WL 1565244, at *2.

The state court's decision is neither contrary to *Jackson, supra,* nor an unreasonable application of federal law or the facts. Given the fingerprint evidence, the testimony of Henry Jackson and Ken Fuentes, and Petitioner's own admissions that he was a murderer, the trial court reasonably concluded that Petitioner acted with premeditation and killed the victim during the course of a robbery so as to support his first-degree murder conviction under the alternate theories.

Petitioner's insufficient evidence claim essentially challenges the inferences the trial court drew from the evidence presented at trial. It is well-settled, however, that "[a]

federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. It is the job of the trier of fact, not a federal habeas court, to resolve evidentiary conflicts, and this Court must presume that the trier of fact resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. The Michigan Court of Appeals' decision was reasonable. Habeas relief is not warranted on this claim.

IV. <u>Conclusion</u>

For the reasons stated, the Court concludes that Petitioner is not entitled to habeas relief on the claims contained in his petition.

Accordingly,

**IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
David Allen Campbell
#167695
Huron Valley Complex – Men
3201 Bemis Road
Ypsilanti, MI 48197

Brad H. Beaver, AAG